NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CENTURY 21 FRONTIER and UNICASA FRONTIER REALTY,<br><br>Plaintiff,<br><br>v.<br><br>ARCH INSURANCE GROUP and ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br><br>Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action 2:10-cv-1997 |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon cross-motions for summary judgment by Arch Insurance Company ("Arch") and Century 21 Frontier ("Plaintiff") pursuant to Fed. R. Civ. P. 56. Defendant St. Paul Fire and Marine Insurance Company ("St. Paul") has also filed opposition to Plaintiff's motion. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, it is the decision of this Court that Defendant Arch Insurance Company's motion for summary judgment is **granted**, and Plaintiff's motion is **denied.**

I.      BACKGROUND

This declaratory judgment action was first brought by Century 21 Frontier ("Plaintiff") against one of its insurance carriers, Arch Insurance Company on February 18, 2010. The case was

removed to United States District Court for the District of New Jersey on April 23, 2010.  Arch filed its motion for summary judgment on May 11, 2010, and received no opposition from Plaintiff. Plaintiff filed its motion for summary judgment on August 6, 2010, which was timely opposed by both Defendants, St. Paul and Arch.  Plaintiff seeks to recover costs of defending itself against a suit for professional malpractice on two "claims made" policies, one issued by Defendant Arch in November 2002, which expired on November 11, 2003, and the other issued by St. Paul on December 15, 2005 and which expired in December, 2006.

The underlying claim for which Plaintiff claims entitlement to insurance coverage revolves around the sale of a property that was the subject of a law suit, *Maria Stoecker v. Mario Echevarria, et al.*, Docket No. HUD-L-4062-05.  The conduct which gave rise to the lawsuit occurred in 2003, but the suit was not brought until 2006.  Plaintiff went to significant expense to defend itself, which it did successfully.  Plaintiff now seeks defense costs from either or both of its two insurers, Arch by whom it was insured in 2003, and St. Paul, by whom it was insured in 2006.  Arch maintains that it was under no obligation to insure Plaintiff for a defense undertaken after the expiration of the Arch policy, and St. Paul contends that its shorter retroactive coverage period does not extend back to the time of the underlying action.  St. Paul additionally raises factual issues concerning the nature of the coverage it was obligated to provide, and to whom, beyond the issues of policy coverage and expiration.

II.     **LEGAL STANDARD**

   A. SUMMARY JUDGMENT

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  Gaston

v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009).  However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b).  "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986).  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56©." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted).  Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of

litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)).  "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

### B. CLAIMS MADE POLICIES

The seminal case in New Jersey that analyzes "claims made" policies is *Zuckerman v. National Union Fire Insurance Co.*, 100 N.J. 304, 495 A. 2d 395 (N.J. 1985). In differentiating between so called "occurrence claim" policies, and "claims made" policies the Court writes "by contrast, the event that invokes coverage under a 'claims made' policy is transmittal of notice of the claim to the insurance carrier. In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period.  Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, *gratis,* resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy."

In a review of other opinions that have analyzed the notice requirement in "claims made" policies, the Court in *Nations First Mortg., LLC v. Tudor Ins. Co.* 2009 WL 3182967, 6 (M.D.Pa.) (M.D.Pa.,2009) wrote "reporting requirements in claims-made policies are strictly construed and enforced; if an insured does not give notice within the required time, 'there is simply no coverage under the policy.' " (citing *4th Street Investments, LLC v. Dowdell,* No. 08-1512, 2009 WL 1904620, at  (3d Cir. July 2, 2009) and *City of Harrisburg v. Int'l Surpluse Lines Ins. Co.,* 596

F.Supp. 954, 961 (M.D.Pa.1984) *aff'd mem.,* 770 F.2d 1067 (3d Cir.1985)). Treatises on the subject confirm this approach. "In general, courts strictly construe notice requirements in 'claims made' policies," 22 *Holmes' Appleman on Insurance* 2d, § 139.8 (2003). Moreover, it is well-established that where the terms of a contract are clearly stated and unambiguous, they must be given their "plain and ordinary meaning." *St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir.19910.) Specifically, "a firm foundational rule in the construction of insurance contracts is that the expressed intent of the parties is to be ascertained by examining the contract or policy as a whole." *See Continental Casualty Co. v. Signal Ins. Co.,* 119 Ariz. 234, 580 P.2d 372 (Ct.App.1978); *Supreme International Corp. v. Home Ins. Co.,* 428 So.2d 295 (Fla.Dist.Ct.App.1983); *National Ins. Underwriters v. Lexington Flying Club, Inc.,* 603 S.W.2d 490 (Ky.Ct.App.1980); *American Casualty Co. v. Purcella,* 163 Md. 434, 163 A. 870 (1933); *Dieckman v. Moran,* 414 S.W.2d 320 (Mo.1967); *See also* Couch on Insurance 3d § 21:19 (2001). In addition, "all provisions of a policy are to be read together and construed according to the plain meaning of the words involved, as to avoid ambiguity while at the same time giving effect to all provisions." *Delaware County Constr. Co. v. Safeguard Ins. Co.,* 209 Pa.Super. 502, 228 A.2d 15 (1967).

**III.     DISCUSSION**

A. <u>ARCH'S MOTION FOR SUMMARY JUDGMENT</u>[1]

It is undisputed by the parties that Plaintiff purchased a "claims made" liability coverage

---

[1] As Arch points out, Plaintiff did not oppose Arch's motion, and the Court must consider Defendant's "statement of undisputed material facts" as undisputed. Nonetheless, this Court has examined the merits, without reliance on the procedural defects of Plaintiff's motion.

policy to insure itself against real estate agents and brokers errors and omissions. It is also undisputed that the policy extended from November 11, 2002, through November 11, 2003, and also provided retroactive coverage extending back to 1997, the year that Plaintiff's business came into existence. Also undisputed is the fact that Plaintiff was sued in the underlying action in 2006, some thirty months after the policy with Arch had expired.

On the first page of the insurance contract between Plaintiff and Arch, submitted by Arch with the affidavit of Mark Skobac, vice-president of Arch as exhibit A (ECF Doc. 7-3, page 6), the following is written:

> **NOTICE; THIS IS A CLAIMS MADE AND REPORTED POLICY. THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. THE CLAIM MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN 60 DAYS AFTER THE END OF THE POLICY PERIOD SHOWN IN THE DECLARATIONS UNLESS AN EXTENDED REPORTING PERIOD APPLIES. PLEASE REVIEW THIS POLICY CAREFULLY.**

Although Plaintiff would have this Court believe that this statement is in need of interpretation, the meaning is clear on its face. Plaintiff would also have us believe that all insurance contracts are "highly technical" and "extremely difficult to understand," (Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, page 16, ECF Doc. 11-1, page 17) and thus should be interpreted according to the reasonable expectations of the insured.

Plaintiff fails to explain, however, how Plaintiff reasonably expected an expired policy to continue to provide insurance coverage into the future. Moreover, if that were Plaintiff's reasonable expectation, why would Plaintiff have purchased insurance coverage from St. Paul, the other Defendant in this action, once the Arch policy had expired?[2] It is clear that the contract provided retroactive coverage, but not prospective coverage after its expiration. If it were otherwise, the inclusion of an expiration date would have been superfluous, and a contract once entered into would live forever. For both practical and public policy reasons, this is untenable. Moreover, to argue otherwise is either to ignore or attempt to obfuscate the controlling law, specifically *Zuckerman v National Union Fire Insurance Co.*, 100 N.J. 304, 495 A. 2d 395 (N.J. 1985). Because Plaintiff was no longer covered by Arch for its errors and omissions at the time they were sued for professional malpractice, there is no contract on which Plaintiff can hope to recover from Arch. Plaintiff's bald and unsubstantiated claim that "there was timely notice" (Plaintiff's Memo of Law in Support of Motion for Summary Judgment, page 12, ECF Doc. 11-1, page 13) ignores the fact that the only thing that could have made the notice timely was its having been given within the covered period, which ended in 2003. Even if Plaintiff gave notice on the day they were served in the underlying action, it was thirty months too late. As a matter of law, Arch no longer insured Plaintiff at the time Plaintiff was forced to defend, and thus was under no obligation to either pay for the defense or otherwise indemnify Plaintiff.

Plaintiff's other arguments that the Arch policy sold to Plaintiff did not conform to the

---

[2] In reality, Plaintiff did not purchase coverage from St. Paul's until December, 2005, more than 2 years after the expiration of its policy with Arch. This raises factual issues, which St. Paul's correctly points out in its moving papers, and which additionally suggest that summary judgment is inappropriate at this stage of the proceedings.

objectively reasonable expectations of the insured and are violative of the public policy of New Jersey are similarly unavailing.

B. Century 21 Frontier's MOTION FOR SUMMARY JUDGMENT

Plaintiff's motion essentially fails to dispute Arch's contentions, and focuses instead on summary judgment against the other Defendant, St. Paul. St. Paul argues in its moving papers that the issue of its liability is not ripe for decision because no discovery has yet been conducted by the parties, a contention with which this Court agrees. In fact, a discovery schedule was only entered on September 12, 2010 by the Honorable Judge Joseph A. Dickson, U.S.M.J., and the parties have yet to exchange or receive answers to interrogatories, much less to conduct depositions or review documents. It is premature to consider the issue of St. Paul's contractual liability on the bare bones of Plaintiff's pleadings. Only when an appropriate factual record becomes available will this Court be in a position to address summary judgment for either Century 21 Frontier or St. Paul.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **denied,** and Defendant Arch's motion is **granted.** An appropriate order follows this opinion.

                                    S Dennis M. Cavanaugh
                                    Dennis M. Cavanaugh, U.S.D.J.

Date: October  21 , 2010
cc: Counsel of Record
        The Honorable Joseph A. Dickson, U.S.M.J.
        File